Case number 22-1028 National Association of Immigration Judges, International Federation of Professional and Technical Engineers, Judicial Council 2 Petitioner v. Federal Labor Relations Authority. Mr. Garcia for the Petitioner, Ms. Osborne for the Respondent. Good morning, Council. Mr. Garcia, please proceed when you're ready. Good morning, Your Honors. May it please the Court, Council. My National Association of Immigration Judges. Acting in haste to deprive immigration judges of their right to belong to a union, the majority has cobbled together a decision that ignores authority precedent covering both the review of unit certifications and the scope of the management official exclusion. This is a direct quote from now-Chairman DeBesser regarding the Authority's 2020 decision. The statement underpins the repeated due process violations committed by the Authority. Unions before this Court today ask that the Court vacate the Authority's 2020 decision decertifying the union and its subsequent 2022 decision, denying a motion to reconsider, and then remand this case back to the Authority so it can issue an opinion consistent with due process. In overruling the Regional Director's detailed and methodical 25-page analysis, the Authority's 2020 and 2022 decisions are, as now-Chairman DeBesser summarily stated, quote, the antithesis of reasoned decision-making, end quote. Both opinions fail to grapple with any of the Regional Director's factual or legal findings, and at no point does the Authority hold that the Regional Director erred in any way. So there's some threshold questions about whether this case is properly before us based on the way it came up. That's right. And it's undisputed, I think, that at the time that you brought your petition for review, there was a motion for reconsideration. And why doesn't that just run squarely into the general doctrine that when there's a motion for reconsideration pending, that bringing up a petition for review is incurably premature? So that motion to reconsider specifically asks for a motion to reconsider UIR or UR 2022, the Authority's 2022 decision. Would you mind just raising the mics just a little bit? Oh, yes. Apologize. Yeah, that's all right. There you go. Speak a little louder, please. Okay. That motion to reconsider, which was filed after the Authority's 2022 decision, was asking for a reconsideration of the 2022 decision, right? And so at that point, we hold that UIR 20 or UR 2020 was final because we were not asking for reconsideration at that point in 2020. And it actually, in the Authority's 2022 decision, it even dismissed the union's motion for reconsideration. And so at that point, what we said in our briefing as well was, if it was incurably premature, it would only be with respect to the Authority's 2022 decision. But what would be the sense of splicing it that way? Because the reason we have the incurable prematurity doctrine is that something might happen in the still ongoing proceedings before the agency that would affect our review, including in rendering it entirely unnecessary. That's going to be the case, even if, I'm not sure it makes sense to splice it in the way that you are, but even if you thought that it could still have the same problem, because whatever was pending before the agency could still have the effect of rendering our review unnecessary. Our understanding is that they wouldn't, because we were asking for reconsideration of the 2022 decision, which was, again, just analyzing a reconsideration already, that whatever effect or decision taken by the Authority would not have affected the 2020 decision, which is the primary decision we're driving. How could that be? Because the 2020 decision, then we would just be addressing a decision that would have been superseded in the agency itself by whatever it did with the 2022 decision. Because the 2020 decision, in our view, is an actual appropriate unit termination, and then the 2022 decision is whether or not they reconsider that. Our further reconsideration after that would then be whether or not they would properly look at the reconsider the original opinion. But that had no effect on whether or not they were going to... Well, suppose they granted reconsideration and they actually gave you everything you asked for. Then we would still be looking at a decision that had already been reconsidered and as to which you'd already gotten the grant of relief? Well, we would ask for a briefing in terms of... We had a pending motion to stay and remand for further fact-finding that never got ruled on. And so I don't know if the court would have given us everything exactly would have helped effectuate or helped provide the relief we were looking for. This problem arose in the federal courts, not in the context of administrative law, but in the context of federal civil procedure and federal rules of appellate procedure. And it created what the advisory committee called a dire trap for the unwary. And so the federal rules of civil procedure of appellate procedure now provide to solve the problem that Judge Srinivasan mentioned, now provide that if the motion for reconsideration is denied, that is the point in which the premature notice of appeal ripens. And so nothing goes forward until the motion for reconsideration is heard. Now, I don't know where this doctrine came from for sure in our court, this incurably premature, but it looks like it came from an opinion about 1985 before any of the federal rules abolished that. And the other thing I don't know is whether it's ever been applied in the FLRA context. Are you aware of it, that incurably premature? I am not aware of any. Because you can't find that in the judicial review provision. You can't find anything of that sort in the judicial review provision for FLRA decisions. So if you're a counsel and you're looking at it and you pull out whatever it is, 703, is it? 703, please. Yeah, yeah. You pull that out and you read it, and you wouldn't have a clue that if you file a motion for reconsideration, you can't file a petition for re-hearing or for judicial review. Correct. Yeah. But aren't there timelines, a time limit to file your petition for review? Yes, there is a 60 day after. So how is a petition for review filed in 2022 timely as to the order in 2020 that you say you're really seeking review of? So the petition for a reconsideration motion on the authority's actions in 2022 are a further extension of just the repeated due process violations that happened over the course of the three years of the underlying litigation. So that's why the motion to reconsider in 2022 is specifically asking to reconsider at the authority's 2022 opinion. Because if we had tried to link it back to 2020, it would be improper or untimely. But then that just proves that it's incurably premature under our precedent, because now you're saying that the argument that you're making for us today, which is that there are due process violations, are the arguments that you were making in your motion for reconsideration. Well, we were raising further due process violations to the court in our 2022 reconsideration, but there are underlying issues and violations that happened in 2020 that we think are properly before this court and are not subject to the incurable premature argument. But you didn't flag those. I mean, there's another issue here, which is whether you raised the arguments before the agency. And I don't know how you could have raised arguments about due process vis-a-vis the initial decision, because I think the due process claims primarily relate to things that happened after the initial decision or in the consideration of the initial decision. So our November 17, 2020 motion to reconsider after the authority's 2020 decision flags the specific arguments about the lack of a reasoned opinion, discusses the issue with the announcement of this new rule that winning parties have to file a process appeal on a winning decision. Those arguments are flagged in our November 17, 2020 briefing to the authority. Right, but even if we thought that those are due process arguments, and I think there's a question about that, but even if we thought that, that would be after the decision that you're saying that it's before us. That is after the first decision that is before you, after the authority's 2020 decision, because up until that point, the authority had not announced this new prophylactic rule. And up until that point, when the authority issued 2020, the regional director's decision was the controlling decision, which is the well-methodical 25-page analysis. So that's your extraordinary circumstance? Well, the extraordinary circumstance, Your Honor, would be the fact that the regional director took the time to analyze the actual day-to-day duties of an immigration judge, went through the criterion as to what a management official is, how it interplays with the immigration judge's duties, and at the end of the day, made the analysis that immigration judges at this day and time in 2020 are not management officials. The extraordinary circumstance... That's not what I was referring to. I was referring to the jurisdictional statute that prohibits a court from reviewing an objection that was not made before the agency, except when there's extraordinary circumstances. I understand, Your Honor. So our argument is that we have made the same arguments to the authority multiple times since the November 17, 2020 motion, and have repeatedly been raising this argument over the past few years. So to be clear, right, the regional director's decision really analyzes a lot of different issues and findings. For instance, whether the Board of Immigration of the U.S. continues to review and remand cases, how immigration judges implement immigration policy, and there are scores of others, but none of these are discussed in the authority's 2020 or 2022 decisions. The length of the authority's 2020 decision comes down to one issue, and the authority explains, quote, arguing immigration judges' decisions do not influence agency policy while board members' decisions do is akin to arguing that district court decisions do not shape the law while appellate court decisions do.  It's nonsense, end quote. This is the sole explanation. I think we have the merits of your process argument from your briefing, and I just want to make sure you have reserved some time for rebuttal. I reserved some time for rebuttal, yes. And we will give you that time if our colleagues don't have any additional questions for you at this time. Thank you, Your Honors. Thank you, Mr. Garcia. Ms. Osborne, we'll hear from you now. Your Honors, may it please the Court. Um, the immigration judge's petition for review to be denied in its entirety. With respect to the constitutional claim, the FLRA's assessment of the union certification petition satisfied any due process rights that the union had with respect to the claims. What exactly is your understanding of the due process claim that's been raised? There are two due process claims, and they were not raised by the union until the second motion for reconsideration, which was still pending when the petition was filed. And just to clarify, we had also raised the premature, incurably premature argument when the union filed an emergency motion for today. What are the two due process claims? Substantive due process and procedural. And we argue... Yeah, but that doesn't... What is the procedural due process? The procedural due process claim, they have argued that they have a liberty interest that was violated by the authority. First, because they had not had the opportunity to assert that there had not been a substantial change to the unit. And that's simply not true. They could have raised that issue. They lost the issue of substantial change before the regional director. The regional director found that there had been a substantial change in the unit, but the regional director found it didn't alter the character of the unit. The authority, when applications for review were made to the regional director's decision, agency filed an application for review, but the union did not. And so the authority properly held under the regulation that the issue of substantial change had been raised. And that's because it was waived and the union should have brought that claim under section 2422. About 31. They also claimed that the authority violated due process rights because there had been a rush to have a dissenting member finalize a draft decision. And that's actually not accurate because the decision had actually been in the process. And the majority had simply stated that they were intending to issue the decision within 21 days and ask the dissenting member to finalize the decision within 21 days. They have also said that the case was not moved at the time that the authorities rendered the second decision denying the motion for reconsideration, and they say that's because the parties had entered into a settlement agreement. But the problem is that the statute gives to the authority alone the ability to determine an appropriate unit, and it's not something that parties can settle. And there is authority case law going back to 1990 that says the fundamental principle of the statute that parties cannot negotiate over the unit status of employee. Yes, I mean, the idea is that the employer then provokes an unfair labor practice charge and refuses to bargain. And then you determine and one of the defenses is an inappropriate unit, right? How can this union ever provoke an unfair labor practice charge? Well, it could have actually provoked an unfair labor practice charge because it had a valid live unfair labor practice complaint that was being prosecuted through the Office of General Counsel as of December. There can't be a refusal to bargain if the union is not recognized. Well, but there is an individual who would have. Oh, an individual. Yes, an individual. I saw that in your brief. That's not the union. But the union itself had live complaints as of December of last year, and those complaints could have moved forward. But the union chose. I don't see how. I frankly don't see how. Well, Your Honor, those complaints were live. And if you look at the settlement agreement, the Office of General Counsel at that point, because the union had not yet been decertified. That's another question I had. I just want to make sure that in the National Labor Relations Board context, which you use rightly as an analogy, an individual or a union can't or even an employer cannot bring an unfair labor practice charge. That's up to the General Counsel. And they can go to the General Counsel and request them to do that. Is that the same situation in the FORA? And in this case, the union had filed five separate charges. The Office of General Counsel consolidated those charges and issued a complaint. OK. So that's when I say that there was a live complaint as of December of last year, there was. And the Office of General Counsel was prepared to cross. Also, in this case, the union has already filed for recertification of the union. And there's going to be a hearing on that for the regional director. That has not been decided. It has not been decided. The hearing is going to be held in January. The parties had asked that proceedings. Has the composition of the FORA changed? Since 2020? Yes, it has. In any event, one of the issues that I did want to raise about the need to exhaust is Congress clearly did not intend for appropriate unit terminations. We are concerned that a direct review of a constitutional claim will provide an incentive for parties to bring challenges to appropriate unit terminations as constitutional claims. And this is important institutionally because there are at least four different decisions among different FLRA components. And those components have non-reviewable decisions and you can only get reviewed indirectly. So, for example, there were five challenges to decisions in district courts over the past five years. Those courts held parties in the case had to administratively exhaust through the ULT process, which is reviewable by the court. Um, if that was not the case, the parties could simply challenge the business decisions, 40 decisions, um, and other non-reviewable decisions directly in the court by raising. You sort of mentioned in passing in your briefing, I think it was in your reply brief is the principle that if the party didn't raise the argument before the agency, the agency to address it, then we lack jurisdiction over it. That is also true. But are you relying on that argument? Because I think if it's jurisdictional, it doesn't matter whether you specifically invoke it, but your briefs didn't make much of an argument to that effect. In my brief or before you today, I can make the argument for you today. I think that, um. I guess I'm wondering, did you not emphasize it in your briefing because you have a concern about its applicability here? No, I don't. I don't, Your Honor. I think claims need to be administratively exhausted. And in this case, it goes also to the issue of prematurity because the constitutional claims were not raised before the authority in the, um, first motion for reconsideration. It's only in the second motion for reconsideration and the union filed the petition before this court before the authority could address it. I think it's an odd formulation that the way I understand it, and I'll ask counsel for the union, is the claim is that the decision of the board or the authority was arbitrary and capricious and therefore it denied us due process, which is just a kind of fancy way of saying it violated the APA. That is a concern. And I think, um, the Supreme Court said in FCC v. Fox that there is arbitrary and capricious under constitutional standards are different from. See, that's an objection that is, it can't, it's never made in the, before the agency, no matter which agency it is, whether it's the board or any other FCC or whatever, it's an objection that's always made for the first time in our court, obviously, because you can't make it without having the, the decision already come down. It's arbitrary and capricious. So that doesn't fall within the prohibition of, uh, the, uh, whatever, 7, 1, 2, 3 or C or something like that. Well, the problem with that is your honor that because there is no direct judicial review right. You need determinations. Congress didn't intend that, that exhaustion of constitutional claims should be exhaustion in the indirect review, the same way that it would be under, um, a simple, you know, challenge that's, that's, thank you very much. Thank you counsel. Mr. Garcia, we'll give the two minutes for rebuttal. Thank you, your honors. Um, the first one I want to talk about is the due process issue when it was raised, right? So this is a quote from our motion to reconsider in November 17th, 2020. Well, the authority erred in at least two ways. One, it incorrectly concluded that this renewed attempt by the agency to rid itself of the union was not an unlawful collateral attack on a previous unit certification and to ignore its own precedent and agency regulations. It's the fundamental things we've been raising for 20 years or for the past two years. And it's in our briefing, it's been before the agency or the authority for at least two years. But it seems to me quite different to say that it's wrong and to say that it's a violation of due process. Assuming that you needed to, assuming that this is the type of thing that you could have raised and that that doctrine applies here, those aren't the same thing. We believe that it raises to the level of a constitutional violation because we pointed out the same issues about the flippant nature of the decision, the lack of analysis to the regional director's decision. That's what we think these are. That's just an arbitrary and capricious argument. So to the decision about arbitrary and capricious, right? The county of Sacramento case has held that, quote, we have emphasized time and again, the touchstone of due process is protection of the individual against arbitrary action of government. But the fault lies in the denial of fundamental procedural fairness or in the exercise of power without any reasonable justification, the service of legitimate government. So you read that and it means every case that we've decided that an agency has acted arbitrarily and capriciously, we've also decided that it's a violation of the Constitution. I don't think that's correct. I agree with you on that. Not every single time that someone acts arbitrary and capricious is a constitutional violation. But in this context, having one sentence that essentially tries to justify overturning the 20-year-old union does shock the conscience, coupled with the fact of now Chairman Dubester's two dissents talking about how he believes this was results-driven decision-making. And to the final argument on jurisdiction, we believe that Griffith is controlling in this case, which did allow constitutional claims to be appealed under 7123A1, which shares the same legislative history of 7123A2. And because of that allowance, we have seen no cases that have flooded this court with constitutional claims on appeals of 7123A1. Thank you, Your Honors. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Randolph